## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN FRAZIER, BRANDI EDWARDS, JENNIFER TYREE, CELINA MONTOYA, and SHARON FRAZIER, as guardian and next friend of T.G., a minor, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | Case No. 18 CV 1991 |
| Plaintiffs, | ) ) | Judge Magistrate Judge |
| v. | ) ) | |
| JOHN BALDWIN, in his official capacity as Director of the Illinois Department of Corrections, | ) ) ) ) | |
| Defendant. | ) ) | **Jury Demand** |

## CLASS ACTION COMPLAINT

Plaintiffs Robin Frazier, Brandi Edwards, Jennifer Tyree, Celina Montoya, and Sharon Frazier, as guardian and next friend of, T.G., a minor, individually and on behalf of all others similarly situated, through their undersigned counsel, complain against Defendant John Baldwin, director of the Illinois Department of Corrections, ("the Department" or "IDOC") as follows:

### Nature of the Case

1.     This case arises under 42 U.S.C. §1983 and alleges violations of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

2.     In particular, Plaintiffs challenge the constitutionality of two official policies of the Illinois Department of Corrections:

- The Department of Corrections prohibits any person who is required to register as a sex offender from having contact with his or her own minor children while on Mandatory Supervised Release ("MSR");

- The Department of Corrections prohibits anyone who is required to register as a sex offender from living in the same residence as his or her own minor children while on MSR.

3. These policies severely interfere with Plaintiffs' fundamental right to maintain their parent-child relationships. The Department of Corrections imposes these onerous restrictions without undertaking any individualized assessment of whether a particular parolee poses a danger to his or her own child and without providing people subject to these restrictions with notice and an opportunity to be heard.

4. Plaintiffs, individually and on behalf of the class they seek to represent, allege that these policies violate their rights under the Fourteenth Amendment of the United States Constitution. Plaintiffs seek class-wide injunctive and declaratory relief.

## Jurisdiction and Venue

5. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the Plaintiffs' claims arose in this district.

## The Parties

7.    Defendant John Baldwin is sued in his official capacity as director of the Illinois Department of Corrections. In his capacity as the director of IDOC and pursuant to state law, he has final authority to set the Department of Corrections' policies with regard to parolees' contact with their children while on MSR.

8.    Plaintiffs Robin Frazier, Brandi Edwards, Jennifer Tyree, and Celina Montoya are mothers of minor children who are required to register as sex offenders and are subject to the challenged policies.

9.    T.G. is Plaintiff Frazier's minor daughter. T.G. is being prohibited from living with and/or having any contact with her mother due to the challenged policies.

## The Challenged Policy

10.   Illinois law gives the Illinois Department of Corrections discretion to decide whether an individual being released on MSR for a sex offense can live with and/or have contact with his or her child.

11.   In particular, 730 ILCS 5/3-3-7 (b-1)(9) provides that people required to register as sex offenders must "refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children *without prior identification and approval of an agent of the Department of Corrections*" while on parole or MSR. (emphasis added).[1]

---

[1]    The Illinois criminal code no longer allows traditional parole (*i.e.*, the potential for early release from an incomplete prison sentence). Rather, all prisoners sentenced to serve a period of incarceration in the IDOC after February 1, 1978, are also sentenced to a separate term of community supervision (called "mandatory supervised release") that occurs after

12.  In accord with this state law, the Prisoner Review Board ("PRB"), which is an independent body responsible for setting parole conditions and determining parole eligibility, imposes the following MSR condition for people required to register as sex offenders: "You shall refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children *without prior identification and approval of an agent of the Department of Corrections*." (emphasis added).

13.  Rather than deciding on a case-by-case basis what contact a particular parolee will be allowed to have with her children, the Department has a blanket policy prohibiting contact between all parents released on MSR for sex offenses and their minor children.

14.  The Department also has the responsibility and authority to investigate and approve "host sites" for people released on MSR.

15.  It is the Department's policy to prohibit people on MSR for sex offenses from residing at host sites where their own minor children live.

16.  In imposing these restrictions, the Department does not take into account the individual characteristics of the parolee and will not consider individual parolees' requests for variance from these policies.

17.  These policies are set forth in writing in the IDOC's Parole School handout, which the IDOC distributes to all persons required to register as sex offenders prior

---

they have finished their prison sentences. See, 730 ILCS 5/5-8-1. Generally speaking, however, the Department uses the terms "parole" and "MSR" interchangeably, as does this Complaint.

to their release on MSR. This document is titled, "Parole Requirements for Offenders with an Active Sex Offender Registry Requirement." It provides in relevant part as follows:

Sex offenders are not allowed to live with or have contact with children. Upon release, the sex offender will be enrolled in sex offender counseling. If at some point the offender is doing well on parole and requests to have contact with children, there is a process that must be followed that includes meetings and approvals with the parole agent, parole supervisor, sex offender therapist and possibly the Department of Children and Family Services and may include a polygraph examination.

18. While the IDOC states that it provides "a process" for someone to seek contact with their children "[i]f at some point the offender is doing well on parole," this process is inadequate for numerous reasons, including the following:

- The Department deprives parolees of their fundamental right to parent-child relationships based on a presumption that all persons required to register as sex offenders are dangerous to their own children. The Department imposes these restrictions without undertaking any individualized assessment of whether a particular parolee poses a danger to her own child and without taking into account the particular characteristics of the parolee, the nature of the offense, or the identity of the victim;

- Parolees are given no pre-deprivation notice and opportunity to contest imposition of restrictions on their parental rights;

- The Department has no set criteria for considering or granting a parolee's request for restoration of her parental rights;

- The Department provides no fair and uniform process for a parolee to follow to seek restoration of her parental rights; and

- The Department sets no time frame in which the Department must consider a parolee's request for restoration of contact with her children.

19. Plaintiffs Montoya and Edwards were also told that the IDOC would consider allowing them visitation with their children if they obtained a "court

order." It is unclear whether this is Department policy or simply the statement of individual Department employees. This policy was never set forth in writing, and the Plaintiffs never received any instructions about how or from whom to obtain such a court order.

20. Plaintiffs Montoya, Edwards and Tyree all tried to obtain such orders.

21. Under Illinois law, sentencing judges do not set the conditions of MSR and therefore do not have the authority to enter orders pertaining to visitation. See, 730 ILCS 5/3-3-7(a).

22. Under Illinois law and the U.S. Constitution, the burden is on the government official that seeks to deprive a parent of custody to prove that the parent is "unfit" and obtain a court order permitting the separation of parent and child. See, *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000); 750 ILCS 50/0.01, *et seq.* (requiring that parental unfitness be established by "clear and convincing evidence").

23. A parent who is on MSR for a sex offense faces the possibility of criminal sanctions and re-incarceration if he or she makes any attempt to contact his or her minor child while on MSR, whether in person, by phone, by letter, or through a third party.

24. Even if an individual parolee has already undergone therapy, treatment, and evaluation prior to his or her release on MSR, IDOC will not consider allowing that person to reside with or have contact with their child when released on MSR.

25. For example, for more than a year prior to her incarceration, Plaintiff Montoya voluntarily attended sex offender therapy with the same treatment providers who work with the Department of Corrections to provide treatment to paroled sex offenders. The treatment providers wrote a letter on Montoya's behalf stating that they would support her living with her daughter when she is released on MSR. IDOC still will not approve a parole plan that allows Montoya to live with her husband and daughter when she is released.

26. In contrast to the restrictions imposed on MSR, parents in prison who have been convicted of sex offenses are not prohibited from having contact with their children. Plaintiffs Frazier, Edwards, Tyree, and Montoya all maintained regular contact through letters, phone calls, and in-person visits with their minor children while incarcerated.

27. Faced with the prospect of their relationships with their children being severed when they leave prison on MSR, some parents opt to remain in prison during their MSR.

28. Plaintiff Edwards is currently in this situation. Although she was approved for release on MSR by the PRB in January 2018, Edwards has opted to "max out" her MSR in prison rather than leave prison and lose all contact with her seven-year-old daughter.[2]

---

[2] Plaintiff Edwards can "max out" her two-year MSR term by serving an extra year in prison because prisoners who are eligible for statutory day-for-day credit while imprisoned continue to receive that credit during any period of incarceration on MSR. 730 ILCS 5/3-6-3(a)(2.1).

29.   Likewise, Plaintiff Tyree is currently attempting to create a parole plan in anticipation of her release on MSR in August 2018. Unless the IDOC changes its policy and allows contact between Tyree and her two minor children when she is released, Tyree will opt to serve her MSR term in prison.

30.   Parents with an indeterminate term of MSR (*e.g.* three years to natural life), do not have the choice of "maxing out" their MSR time in prison.[3] Pursuant to 730 ILCS 5/3-14-2.5(e) the running of MSR time "toll[s] during any period of incarceration" for people sentenced to indeterminate MSR. Thus, their only hope of reestablishing contact with their children outside of prison is to find a place to live apart from their children; cease all contact with their children; ask their parole agent and counselor for the right to see their children again; and hope that the Department will eventually see fit to grant the request.

31.   Plaintiff Frazier is currently in this situation. She was sentenced to an indeterminate term of MSR. She was released on MSR on February 24, 2018. Before her release, she sought permission to live with her mother and her minor daughter, but IDOC would not approve this plan. She is now living alone and is prohibited from having contact with her child. Frazier has requested that she be allowed contact with her daughter, but her parole agent told her that it is unlikely that the

---

[3]   Individuals convicted of "predatory criminal sexual assault of a child, aggravated criminal sexual assault, or criminal sexual assault" after July 1, 2005, or of "aggravated child pornography ... manufacture of child pornography, or dissemination of child pornography" after January 1, 2009, are sentenced to an indeterminate term of MSR "rang[ing] from a minimum of three years to a maximum of the natural life." 730 ILCS 5/5-8-1(d)(4). The Illinois Supreme Court has interpreted this statute to require sentencing courts to impose an indeterminate MSR period of "three years to life" rather than a determinate period within that range. *People v. Reinhart*, 2012 IL 111719 (2012).

Department will even consider her request before her daughter turns 18 (approximately seven months from now).

## Facts Pertinent to the Named Plaintiffs

**Robin Frazier and T.G.**

32.   Robin Frazier was convicted in 2014 of one count of criminal sexual assault. The victim of her offense was a 17-year-old resident of a facility at which she worked as a counselor. She was sentenced to serve four years in the Illinois Department of Corrections at 85 percent.

33.   She was released from Logan Correctional Center on MSR on February 24, 2018. She has an indeterminate MSR period of "three years to natural life."

34.   Frazier has two children. Her younger daughter, T.G., is a minor. T.G. turned 17 in September.

35.   While Frazier was incarcerated, she and her daughters stayed in regular and consistent contact. They talked on the phone two or three times a week. They wrote each other letters regularly, and T.G. visited her mother in prison three or four times a month.

36.   At the time of Frazier's offense and criminal charges, both of her children were minors and Frazier had sole custody of them. While she was out on bond, she was allowed to continue living with her two children. After she was found guilty, her children continued living with her for six months until she began serving her prison sentence in October 2014.

37.   While Frazier was in prison, her mother, Sharon (T.G.'s grandmother), had temporary guardianship of her children. The guardianship documents state that custody of T.G. will be returned to Frazier upon her release from prison.

38.   Frazier sought to serve her MSR time while living at Sharon's home with her minor daughter. (Frazier's older daughter is now away at college).

39.   Frazier proposed Sharon's address as a "host site." The Department denied approval of the host site because T.G. lives there.

40.   Because the Department barred Frazier from serving her MSR while living at her mother's house with her daughter, Frazier's mother took out a second mortgage to buy a separate property for Frazier. The Department approved this address and Frazier is currently living there alone and is not allowed to call, see or write T.G.

41.   After her release, Frazier asked her parole agent (Officer Rucker) how soon she can complete a safety plan so she can be in touch with her daughter. Officer Rucker stated that it is unlikely that the Department will even consider a request for a safety plan before T.G. turns 18 (in September 2018).

42.   Frazier will face imprisonment if she sees, talks to, writes to, or contacts her daughter. Frazier cannot even ask her mother to pass along a message that she loves her daughter.

43.   There is no evidence that Frazier poses a risk to her daughter. Frazier has never been accused of abuse or misconduct of any kind toward her children. Frazier

has never been found by a court to be unfit to be a parent, and no proceedings have ever been instituted to terminate her rights as a parent.

44.   Frazier is a devoted and attentive mother and believes it is in her daughter's best interests to continue to have a close relationship with her.

45.   T.G. is a senior in high school. She wants live with her mother.

46.   T.G. is preparing to attend college next fall. She is currently deciding between Bradley University and Southern Illinois University. She wants to discuss her options with her mother and obtain her mother's guidance about choosing a school, paying for college, and where to live.

47.   T.G. also wants her mother to be involved with the many important events associated with her senior year of high school, including graduation, senior prom, and her extracurricular activities as a cheerleader and member of her high school's track and soccer teams.

48.   Both Frazier and T.G. are severely distressed that they will not be allowed to see each other or even speak to each other for the next seven months.

**Brandi Edwards**

49.   Brandi Edwards was convicted in 2015 of one count of criminal sexual abuse. The victim of her offense was a 16-year-old male student at a school where she was working as an intern.

50.   Edwards was sentenced to serve six years in the Illinois Department of Corrections at 50 percent, plus a two-year term of MSR.

51. Edwards has completed her sentence and the PRB found she was eligible for release from Logan Correctional Center on MSR on January 5, 2018.

52. Edwards remains in prison. She has chosen to serve out her MSR sentence in prison rather than to be released and not be allowed to see her daughter.

53. Edwards is the mother of a seven-year-old daughter (B.P.) who is in second grade. Before her incarceration, Edwards and B.P. lived with Edwards' parents in Homer Glen, Illinois. B.P.'s father pays child support, but he is not otherwise involved in his daughter's life.

54. Edwards has never been accused of abuse or misconduct of any kind toward her daughter. She has never been found by a court to be unfit to be a parent, and no proceedings have ever been instituted to terminate her rights as a parent.

55. During Edwards' incarceration, her parents have temporary guardianship of B.P. Under the temporary guardianship agreement, Edwards will regain custody of her daughter when she is released from prison.

56. Throughout her prison sentence, Edwards has stayed in contact with her daughter. They talk on the phone twice a week; write letters and notes to each other once or twice a month; and Edwards' parents bring B.P. to visit Edwards in person twice a month.

57. Approximately five months before the end of her prison term, Edwards began preparing her parole plan. She requested approval to live at her parents' house while on MSR.

58.   An IDOC parole agent investigated Edwards' parents' house in August 2017. The agent denied approval for Edwards to live there upon learning that Edwards' daughter also lived at the house. The agent stated that Edwards' would be prohibited from having contact with her daughter while on MSR.

59.   Edwards met with three members of the PRB in September 2017 to discuss the conditions of her parole. During this meeting, Edwards told the PRB about the parole agent's statement and asked whether she would be prohibited from seeing her daughter while on MSR.

60.   Kenneth Tupy, one of the PRB members at the meeting, told her that IDOC would allow her to have contact with her daughter if she obtained a court order. At the bottom of the PRB order, Tupy wrote "inmate can see child pursuant to a court order."

61.   Edwards immediately requested a court order allowing her to have contact with her daughter from both the Circuit Court of Cook County (where she was sentenced) and the Circuit Court of Will County (where she was awarded custody of her daughter in 2011). Neither court responded to this request.

62.   As long as Edwards remain in prison, she is allowed to stay in contact with her daughter.

63.   Edwards is the only active parent in her daughter's life, and she believes it would be harmful to her daughter to be cut off from contact with her mother.

64.   Faced with the options of remaining in prison, where she is allowed to see, talk to, and write her daughter, or leaving prison on MSR, where she will be

completely barred from having any contact with her daughter, Edwards has decided to "max out" her MSR time in prison.

**Jennifer Tyree**

65. Jennifer Tyree is currently incarcerated at Decatur Correctional Center. She was convicted in 2015 of aggravated criminal sexual abuse. The victim of her offense was a 17-year-old male student at a school where she was a teacher.

66. Tyree was sentenced to serve seven years in the Illinois Department of Corrections at 50 percent, plus a two-year term of MSR.

67. Tyree is eligible for release from prison on MSR on August 10, 2018.

68. Tyree has three children. When she is released from prison, two of them will be minors—a 17-year-old son and a 13-year-old daughter.

69. While Tyree has been incarcerated, she has had regular contact with her children. They visit once or twice a month; she mails them letters and cards approximately once a week; and she talks to them on the phone regularly.

70. While Tyree was out on bond for nearly three years awaiting trial on the charge of criminal sexual abuse, she had custody of and lived with her children. Even after her conviction, she was allowed to continue living with her children before she began serving her prison sentence.

71. While Tyree has been in prison, her children have been living with their father (Tyree's ex-husband). Tyree's ex-husband is supportive of her maintaining a close relationship with their children.

72.   When Tyree is released from prison, she wants to continue the close relationship she has always had with her children and plans to share custody of her children with their father.

73.   Pursuant to the IDOC's policies, Tyree will be prohibited from having any contact with her children while on MSR. She will face re-incarceration and new criminal charges if she sees, talks to, writes, or contacts her children in any way.

74.   There is no evidence that Tyree pose a danger to her children if she has contact with them when she is released from prison on MSR. Tyree has never been accused of abuse or misconduct toward her children. She has never been found by a court to be unfit to be a parent, and no proceedings have ever been instituted to terminate her rights as a parent.

75.   If Tyree is faced with the choice of staying in prison where she can maintain contact with her children and being released from prison on MSR where she is prohibited from having any contact with her children, she will choose to remain in prison for the entire period of her MSR (an additional year behind bars).

76.   When Tyree is released from prison, she wants to live in the Springfield area near her children. Tyree's parents, her sister and her sister's spouse are all willing to help Tyree obtain housing while on MSR.

77.   Tyree is approximately five months away from her release date. The Department's field services office (a division of the parole department responsible for assisting inmates with preparation of their parole plans) told her that she should already be making a parole plan and proposing host sites because the

Department takes significant time to investigate and approve housing. Tyree is unable to begin making a parole plan because she will not leave prison on MSR unless she will be allowed to have contact with her children.

78. Tyree has tried to obtain a court order allowing her contact with her children, but these efforts have been unsuccessful. In particular, in April 2017, Tyree filed a motion for an amended mittimus with her sentencing judge. She requested that her sentencing order be amended to reflect that she has permission to have contact with her minor children while on MSR. She sent copies of the motion to the judge, the state's attorney, and the clerk of court. She has received no response to date.

79. Tyree has exhausted all available administrative remedies within the Department of Corrections. In particular, she filed a grievance (No. 35.1.17) on December 29, 2016, asking that the Department of Corrections change its policy of prohibiting all contact between sex offenders and their children while on MSR and create a policy that would allow "sex offenders on a case-by-case basis to be reviewed to go home to [their] children." On January 11, 2017, counselor Kunzgman-Watkins at Logan Correctional Center denied the grievance, writing that "these regulations are to be adhered to by all offenders according to set policies" as "explained in the [parole school] memo." Tyree timely appealed this decision to the Administrative Review Board. The Administrative Review Board responded to the appeal on June 23, 2017. The ARB affirmed the denial of the grievance finding that it was an appropriate "administrative decision."

**Celina Montoya**

80. Celina Montoya is currently incarcerated at Logan Correctional Center. She was convicted in 2015 of one count of criminal sexual assault. The victim of her offense was a 14-year-old male student at a school where she was a teacher.

81. Montoya was sentenced to serve four years in the Illinois Department of Corrections at 85 percent, plus an indeterminate MSR period of "three years to natural life." She is eligible for release from prison on MSR on April 26, 2019.

82. Montoya is married. She and her husband have three children. Their youngest daughter will still be a minor when Montoya is released from prison.

83. While Montya has been incarcerated, she has had consistent contact with her children and her husband. They visit her at the prison; Montoya writes them letters; and she talks to them on the phone. Montoya, who was a math teacher before her conviction, often helps her daughter with her school work over the phone.

84. For more than a year before she was incarcerated, Montoya voluntarily attended sex offender therapy with the same treatment providers who work with the Department of Corrections to provide treatment to paroled sex offenders. The treatment providers wrote a letter on Montoya's behalf stating that they would support her living with her daughter when she is released on MSR.

85. Montoya also obtained an assessment by Gerald Blain, a psychologist experienced in the treatment and evaluation of people who have committed sex offenses. It was his conclusion that Montoya posed a "very low to low range of risk"

for re-offense, and he recommended that Montoya be permitted to live with her family and that her contact with her children not be restricted.

86. Montoya wants to serve her MSR while living at her home with her husband and her daughter, both of whom want her to live with them. Montoya's family is committed to supporting her successful reintegration into the community.

87. Montoya has requested approval to live at home with her husband and daughter while on MSR.

88. Field Services responded that it will not approve her home as a "host site" because her minor daughter lives there.

89. Montoya filed a motion in the Circuit Court of Lake County in January 2017 asking her sentencing judge to amend her mittimus to provide that she has "permission to have contact with her minor children while on MSR." In response, she received a handwritten document labeled "Agreed Order" signed by her sentencing judge that states she will be "permit[ted] to have contact with her biological children" while on MSR.

90. Montoya forwarded this Order to Alyssa Williams-Schafer, who was at the time the supervisor of all Field Services representatives who work with sex offenders preparing for their release on MSR.

91. In response, Williams-Schafer wrote Montoya a letter stating that even with this Order, the Department would still restrict her contact with her daughter. In particular, the Department would require her to "work with [a] sex offender treatment provider to establish a safety plan" before she would be allowed to have contact with her children and the Department would not allow Montoya to live with her daughter "until [she is]

evaluated by the sex offender treatment provider to be at no risk to offender (sic) against a child." The letter further stated that the Department will not begin the process of developing a safety plan until "after [she is] released."

92.  It is impossible for Montoya (or anyone else) to obtain an evaluation that states she poses "no risk." In their letter in support of Montoya's having contact with her child while on parole, her therapists acknowledged that they "are not ever able to give someone ... a 'no risk' classification that is predictive of the future."

93.  Montoya has never been accused of abuse or misconduct toward her children. She has never been found by a court to be unfit to be a parent, and no proceedings have ever been instituted to terminate her rights as a parent.

94.  Montoya has exhausted all available administrative remedies. In particular, she filed a grievance on January 17, 2017 (No. 39.1.17), requesting that she be allowed to have a parole plan that allows her to live with and have contact with her daughter. Counselor Kunzeman-Watkins denied the grievance on January 23, 2017. Montoya appealed the decision on January 25, 2017. On appeal, Grievance Officer J. Martin found the grievance to be "without merit" on February 3, 2017. Montoya then appealed to the Administrative Review Board on February 9, 2017. The ARB responded that the issue was "not grievable." After this, Montya wrote directly to Director Baldwin, who has not responded.

**Class Allegations**

95.  Pursuant to Fed. R. Civ. P. 23(b)(2), the named Plaintiffs seek certification of this complaint as a class action.

96. Named Plaintiffs Frazier, Edwards, Tyree, and Montoya seek to represent a class defined as follows:

- **Class One**: All persons who are prohibited from having contact with and/or living with their children while on MSR because they have been convicted of a sex offense in the absence of any individualized determination that they pose a danger to their children;

97. Named Plaintiff T.G. seeks to represent a class defined as follows:

- **Class Two**: All children who are currently being denied contact with their parents due to the Department's policy prohibiting all persons on MSR who have been convicted of sex offenses from having contact with and/or living with their children in the absence of any individualized determination that their parents pose a danger to their children.

98. The Plaintiff Classes seek a declaration that the policies described above are unconstitutional and an injunction prohibiting the Department from continuing to enforce the policies.

99. The proposed classes are numerous. Based on data available from the Illinois Sex Offender Registry, there are currently 7,298 people who are classified as sex offenders imprisoned in the Illinois Department of Corrections. If less than one percent of these people are parents of minor children and thus subject to the challenged policies, both classes will have well over 40 members.

100. Joinder of all class members is impracticable. Not only are the classes numerous, but membership in the classes is constantly expanding as additional people required to register as sex offenders are sentenced and/or become eligible for release on MSR.

101. There are questions of law and fact common to all class members, including

but not limited to the following:

- What are the Department's rationales for the challenged policies;

- Whether there is any compelling interest served by the Department's policies;

- Whether the Department offers any process for parolees subject to the challenged policies to seek restoration of their parental rights, and if so, how that process works, what standards or criteria are applied, and who is authorized to decide whether to restore parental rights of parolees; and

- Whether the challenged policies are unconstitutional on their face because they fail to provide any notice, hearing, or individualized determination before depriving parolees of their parental rights.

102. All individuals falling within the class definitions have been subject to the same policies. Given the commonality of the questions pertinent to all class members, a single declaratory judgment would provide relief to each member of the class.

103. Defendants have acted and continue to act in a manner adverse to the rights of the proposed classes, making final declaratory relief appropriate with respect to the classes as a whole.

104. Plaintiffs and the classes they seek to represent have been directly injured by the statutory schemes and practices challenged herein; and members of the class are currently at risk of future harm from the continuation of these policies and practices.

105. Plaintiffs will fairly and adequately represent the interests of the class; and the Plaintiffs' claims are typical of the claims of all members of the proposed class.

106. Plaintiffs' counsel are experienced in civil rights litigation, including *Monell* claims, (b)(2) class actions, and constitutional matters on behalf of incarcerated people. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

## COUNT I
## 42 U.S.C. §1983 – FOURTEENTH AMENDMENT
### Procedural Due Process

107. Plaintiffs Frazier, Edwards, Tyree and Montoya, individually and on behalf of the class they seek to represent, reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

108. The Department of Corrections' policies, which automatically deprive people required to register as sex offenders of their parental rights to contact and live with their children while on MSR without any individualized determination that they pose a danger to their children, and without any pre- or post- deprivation process violates the Fourteenth Amendment guarantee of procedural due process.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that the policies described herein as applied to Plaintiffs Frazier, Edwards, Tyree and Montoya and the members of Class One violate the Fourteenth Amendment of the U.S. Constitution;

d) Enter a preliminary and then permanent injunction prohibiting Defendant from continuing the unconstitutional policies and practices identified herein;

e)      Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)      Grant such other relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. §1983 – FOURTEENTH AMENDMENT
### Substantive Due Process

109. Plaintiffs Frazier, Edwards, Tyree and Montoya, individually and on behalf of the class they seek to represent, reallege and reincorporate, as though fully set forth herein, each and every allegation contained above.

110. The Department of Corrections' policies, which deprive people required to register as sex offenders of their fundamental rights to contact and live with their children while on MSR, are not narrowly tailored to serve a compelling government interest, and therefore violate the Fourteenth Amendment guarantee of substantive due process.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)      Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)      Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)      Enter judgment declaring that the policies described herein as applied to Plaintiffs Frazier, Edwards, Tyree and Montoya and the members of Class One violate the Fourteenth Amendment of the U.S. Constitution;

d)      Enter a preliminary and then permanent injunction prohibiting Defendant from continuing the unconstitutional policies and practices identified herein;

e)      Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)      Grant such other relief as this Court deems just and proper.

## COUNT III
## 42 U.S.C. §1983 – FOURTEENTH AMENDMENT
### Substantive Due Process

111. Plaintiff Sharon Frazier, as guardian and next friend of T.G., individually

and on behalf of the class she seeks to represent, realleges and reincorporates, as

though fully set forth herein, each and every allegation contained above.

112. The Department of Corrections' policies, which deprive children of their

fundamental right to contact with their parents, are not narrowly tailored to serve a

compelling government interest, and therefore violate the Fourteenth Amendment

guarantee of substantive due process.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)      Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)      Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c)      Enter judgment declaring that the policies described herein as applied to Plaintiff T.G. and the members of Class Two violate the Fourteenth Amendment of the U.S. Constitution;

d)      Enter a preliminary and then permanent injunction prohibiting Defendant from continuing the unconstitutional policies and practices identified herein;

e)      Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)      Grant such other relief as this Court deems just and proper.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
773-283-3913