UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN FRAZIER, BRANDI EDWARDS, JENNIFER TYREE, CELINA MONTOYA, and SHARON FRAZIER, as guardian and next friend of T.G., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 18 C 1991 Judge Gary Feinerman |
| Plaintiffs, | | |
| vs. | | |
| JOHN BALDWIN, in his official capacity as Director of the Illinois Department of Corrections, | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Four women serving terms of mandatory supervised release following their state court convictions for sex offenses bring this putative class action under 42 U.S.C. § 1983 against John Baldwin in his official capacity as the director of the Illinois Department of Corrections ("IDOC"), alleging that an IDOC policy prohibiting them from having any contact with their minor children for the first six months of mandatory supervised release violates their procedural and substantive due process rights. Doc. 1. (One of the minor children brings a substantive due process claim of her own, but for simplicity's sake this opinion will refer only to the mothers' claims.) IDOC moves under Civil Rule 12(b)(6) to dismiss the substantive due process claim. Doc. 34. The motion is denied.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

1

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Plaintiffs, mothers of minor children, are either eligible for or serving terms of mandatory supervised release ("MSR"), a nondiscretionary form of parole, after having been convicted in Illinois state court of crimes for which they must register as sex offenders. Doc. 1 at ¶¶ 8, 11 n.1. An Illinois statute, 730 ILCS 5/3-3-7(b-1)(9), provides that persons required to register as sex offenders must during their MSR terms "refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children without prior identification and approval of an agent of [IDOC]." *Id*. at ¶ 11. In words nearly identical to the statute, the Illinois Prisoner Review Board, the body responsible for setting MSR conditions, imposed on Plaintiffs what will be called "the Contact Condition": "You shall refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children without prior identification and approval of an agent of [IDOC]." *Id*. at ¶ 12.

To implement the Contact Condition, IDOC adopted a policy that categorically prohibits all persons subject to the condition, regardless of individual circumstances or risks, from contacting their minor children for the first six months of their MSR term. *Id*. at ¶¶ 13, 15; Doc. 13 at 1-2 (noting that the blanket policy applies for the first six months of MSR); Doc. 19 at 2

(same). (IDOC notified the court on the record that it plans to revise the policy, Doc. 22, and the court issued a preliminary injunction that lifts the categorical six-month ban, Doc. 33, but IDOC's motion assumes that the ban formally remains in place, Doc. 35 at 1, and the court will do so as well.) Pursuant to that policy, IDOC barred Plaintiffs from contacting their minor children by any means during the first six months of MSR even though they had "maintained regular contact through letters, phone calls, and in-person visits with their minor children while incarcerated." Doc. 1 at ¶¶ 23, 26.

## Discussion

Plaintiffs sued to enjoin IDOC's policy, alleging that it violates their substantive and procedural due process rights. *Id*. at ¶¶ 107-112. To support their substantive due process claim, Plaintiffs allege that the policy's deprivation of "their fundamental rights to contact and live with their children while on MSR [is] not narrowly tailored to serve a compelling government interest." *Id*. at ¶ 110. IDOC contends that the substantive due process claim should be dismissed because it must be brought, if at all, in a habeas corpus petition, not a § 1983 suit.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). The Supreme Court has delineated the respective scope of these two avenues in a series of cases beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973). As matters now stand, "state prisoners [may] use only habeas corpus … when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Thus, if "a judgment in favor of the plaintiff" on a particular

3

claim "would necessarily imply the invalidity of [a] conviction or sentence" that has not yet been invalidated, the plaintiff must bring that claim under the habeas statute, *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), after satisfying "its attendant procedural and exhaustion requirements," *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). By contrast, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," the plaintiff may bring her claim under § 1983. *Heck*, 512 U.S. at 487.

"The exception to § 1983 jurisdiction" for claims covered by the federal habeas statute "is a narrow one, designed to preserve the specific role of habeas corpus relief." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Habeas is the exclusive avenue of relief only where the claim "seeks—not where it simply relates to—core habeas corpus relief, i.e., where a state prisoner requests present or future release." *Wilkinson*, 544 U.S. at 81 (internal quotation marks omitted). Thus, "§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner," as when a prisoner seeks a new parole hearing on the ground that the procedures employed in the prior hearing violated the Constitution, *ibid.*, or an injunction barring prison officials from using unconstitutional procedures in future disciplinary proceedings, *see Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974). Similarly, a person sentenced to death may use § 1983 to challenge the "policies and procedures" used to "implement[]" the sentence. *Hill v. McDonough*, 547 U.S. 573, 577, 579-80 (2006).

These rules are relatively simple to apply when an incarcerated plaintiff files a lawsuit challenging some aspect of her incarceration: "[A] prisoner challenging the fact or duration of his confinement must seek habeas corpus relief; a prisoner challenging a condition of his confinement, by contrast, must seek relief under 42 U.S.C. § 1983." *Cochran v. Buss*, 381 F.3d

4

637, 639 (7th Cir. 2004). The rules are more difficult to apply when the plaintiff is on probation or parole, where "the distinction between the fact of confinement and the conditions thereof is necessarily blurred." *Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir. 1977). As the Seventh Circuit has explained:

> [For parolees,] the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or … obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom. … [These] restrictions define the perimeters of her confinement. Thus, eliminating or changing one of the restrictions would alter the confinement: figuratively speaking, one of the "bars" would be removed from the [parolee's] cell.

*Williams v. Wisconsin*, 336 F.3d 576, 579-80 (7th Cir. 2003) (internal quotation marks, citations, and brackets omitted). Therefore, "if [a plaintiff] is seeking release from the conditions of probation [or parole] imposed on him by the courts, a petition for a writ of habeas corpus is the appropriate vehicle for seeking relief, not a lawsuit … under section 1983." *Tobey v. Chibucos*, 890 F.3d 634, 651 (7th Cir. 2018) (italics omitted); *see also Jackson v. Lemmon*, 738 F. App'x 369, 371 (7th Cir. 2018) ("Jackson may not challenge his parole condition … in a § 1983 suit for damages. Because parole is a form of custody, a challenge to a parole condition is a challenge to the perimeters of his confinement and so must be brought as a collateral attack.") (internal quotation marks and brackets omitted); *Williams*, 336 F.3d at 579 (same); *Drollinger*, 552 F.2d at 1225 ("Habeas corpus … is the appropriate remedy for a defendant seeking release from custody or expansion of the perimeters of his confinement. [The plaintiff's] constitutional challenge to the conditions and terms of probation is an attempt to obtain such relief, and therefore, must be brought as a petition for habeas corpus.").

The parties agree on these principles and dispute only how they apply to this case. Plaintiffs submit as a preliminary matter that IDOC's policy is not itself a "condition" of their MSR because it was neither included in the sentence entered by the court nor imposed as an

5

MSR condition by the Prisoner Review Board; rather, they contend, the policy is an internal guideline governing how IDOC officials implement the Contact Condition. Doc. 47 at 3-5. Plaintiffs are correct. State law governs whether a parole condition is part of the plaintiff's sentence for purposes of *Preiser* and its progeny. *See Hill*, 547 U.S. at 577, 580-81 (analyzing state law to determine whether the plaintiff challenged "the fact of the sentence itself"); *Drollinger*, 552 F.2d at 1225 ("Our analysis of the Indiana statutes authorizing the granting of probation demonstrates … that the plaintiff is in this suit challenging the sentence of the trial court, clearly the proper subject matter for a habeas corpus action."). And Illinois law provides that "[t]he conditions of parole or mandatory supervised release shall be such as the *Prisoner Review Board*"—not IDOC—"deems necessary to assist the subject in leading a law-abiding life." 730 ILCS 5/3-3-7 (emphasis added). Thus, as IDOC acknowledges, there is a distinction between the Contact Condition itself and the manner in which IDOC implements it. Doc. 52 at 1 ("The statutory MSR conditions, which are automatically imposed at sentencing, give the IDOC the discretion to determine whether a sex offender may have contact with minors.").

The dispositive question, then, is whether Plaintiffs' substantive due process challenge to the way IDOC implements the Contact Condition may be brought under § 1983 or instead must be brought in a habeas petition. The answer is that the challenge may proceed under § 1983.

As noted, "a prisoner challenging the fact or duration of his confinement must seek habeas corpus relief," *Cochran*, 381 F.3d at 639, and for a parolee, "the conditions of parole are the confinement," *Williams*, 336 F.3d at 579 (emphasis omitted). Plaintiffs' challenge here, however, is not a challenge to their confinement because it is not a challenge to the Contact Condition itself. If Plaintiffs succeed on their substantive due process claim, the Contact Condition will continue to apply and IDOC will continue to implement it, so long as it does so in

6

a constitutional manner. For the same reason, victory for Plaintiffs on their claim will not result in the "elimination or substitution" of the Contact Condition. *Drollinger*, 552 F.2d at 1225. Nor does Plaintiffs' substantive due process challenge "necessarily imply the invalidity of [their] conviction[s] or sentence[s]," *see Heck*, 512 U.S. at 487, since a challenge to one way of *implementing* the Contact Condition does not suggest that the condition *itself*, or any other aspect of Plaintiffs' convictions or sentences, is unlawful. And although the Contact Condition, like Plaintiffs' other MSR conditions, is among the "bars" of their metaphorical prison cells, *Williams*, 336 F.3d at 580, how IDOC has chosen to implement that condition is the equivalent of what prison officials do within the confines of an actual prison cell—the archetypical subject of a § 1983 prison conditions suit.

The analogy between Plaintiffs' substantive due process claim and a typical § 1983 prison conditions suit is a strong one. Although a court order sentencing a defendant to a term of imprisonment must be challenged via a habeas petition, the manner in which state officials implement the sentence—for example, whether they provide the prisoner with sufficient access to medical care, *see Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015), expose her to extreme temperatures or noxious substances, *see McKinley v. Schoenbeck*, 731 F. App'x 511, 516 (7th Cir. 2018), or protect her from threats to her physical safety, *see Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017)—is properly subject to a § 1983 suit. After all, a court order requiring a state official to implement a prison sentence differently does not alter the nature or length of the prisoner's sentence, even though it changes her experience in prison. By the same token, a court order prohibiting a state official from implementing a parole condition in a certain way—here, an order prohibiting IDOC from implementing the Contact Condition in a way that categorically bars a parolee from contacting her minor children for at least six months regardless

7

of the actual risk such contact would pose—would not alter any plaintiff's sentence, even though it may change her experience on parole.

Plaintiffs' substantive due process challenge to IDOC's implementation of the Contact Condition also bears a strong resemblance to the Eight Amendment challenge in *Hill* to the procedures adopted by the Florida Department of Corrections for implementing a death sentence by lethal injection. *Hill* held that the prisoner's claim was properly brought under § 1983 where the governing Florida statute required that the plaintiff "be executed by lethal injection," but "le[ft] implementation to the department of corrections" and "[did] not require the department of corrections to use the challenged procedure." 547 U.S. at 577, 580. The Supreme Court reasoned that a suit seeking to enjoin Florida prison officials from "executing [the plaintiff] in the manner that they currently intend" was distinguishable from a suit "challenging the lethal injection sentence as a general matter." *Id*. at 580. The Court added that the plaintiff's suit left open the possibility that "other methods of lethal injection the Department could choose to use would be constitutional," meaning that his lawsuit "if successful would not necessarily prevent the State from executing him by lethal injection." *Id*. at 580-81.

Plaintiffs' challenge to IDOC's implementation of the Contact Condition shares important commonalities with the § 1983 claim in *Hill*. For one, Plaintiffs' challenge is distinguishable from a challenge to the Contact Condition "as a general matter," as victory for Plaintiffs would leave the Contact Condition in place and change only how IDOC implements it. For another, the Contact Condition as written does not require IDOC to use the policy challenged by Plaintiffs; the condition provides that Plaintiffs may not contact minors without IDOC's permission, Doc. 1 at ¶ 11, but does not prohibit IDOC from giving Plaintiffs permission to contact their minor children within the first six months of their MSR terms or place any other

restrictions on how and when IDOC may grant such permission. And contrary to IDOC's submission, Doc. 52 at 2, victory for Plaintiffs would not "eliminate[]" the Contact Condition or require IDOC to grant Plaintiffs permission to see their children at any particular time or after any particular juncture. Plaintiffs allege that a *blanket* policy of refusing permission for six months without an *individualized* risk assessment violates substantive due process. Doc. 1 at ¶ 18. If this argument prevails, IDOC still could bar contact for six months (or perhaps longer) based on an individualized evaluation of a parolee's circumstances. *Id*. at ¶¶ 110, 112.

IDOC retorts that because the Contact Condition grants it discretion to decide whether Plaintiffs may contact their minor children, any attempt to cabin its discretion would "partially invalidate" the condition. Doc. 52 at 1. But prisoners routinely file suits challenging decisions committed by law to the discretion of prison officials, and those suits are properly brought under § 1983. *Compare Isby v. Brown*, 856 F.3d 508, 525 (7th Cir. 2017) ("[A] prison's internal security is a matter normally left to the discretion of prison administrators.") (alteration omitted) (quoting *Hewitt v. Helms*, 459 U.S. 460, 474 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)), *with Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) (entertaining a § 1983 suit challenging prison officials' failure to protect the plaintiff from physical harm); *compare People v. Lego*, 570 N.E.2d 402, 403-04 (Ill. App. 1991) (describing IDOC's broad discretionary authority over prisoners' conditions of confinement), *with Wilkinson*, 544 U.S. at 84 ("[T]his Court has repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement … ."). Indeed, IDOC acknowledged at the motion hearing that Illinois prisoners may challenge under § 1983 the manner in which they are housed even though Illinois law gives it discretionary authority over how to house prisoners. *See* 730 ILCS 5/3-2-2(1)(c) ("[T]he Department [of Corrections] shall have the following

9

powers: … To maintain and administer all State correctional institutions and facilities under its control … ."). IDOC offers no principled reason for treating any differently discretionary decisions regarding implementation of MSR conditions like the Contact Condition.

IDOC does not seek dismissal of Plaintiffs' substantive due process claims on any other ground, so any such argument is forfeited for purposes of this motion. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court.").

**Conclusion**

For the foregoing reasons, IDOC's motion to dismiss Plaintiffs' substantive due process claim is denied.

January 23, 2019

United States District Judge