UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER TYREE, CELINA MONTOYA, ZACHARY BLAYE, and RONALD MOLINA, individually and on behalf of all others similarly situated, | ) ) ) | 18 C 1991 |
| | ) | |
| Plaintiffs, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) | |
| | ) | |
| ROB JEFFREYS, in his official capacity as Acting Director of Illinois Department of Corrections, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Four persons serving mandatory supervised release ("MSR") terms following their state court sex offense convictions bring this putative class action under 42 U.S.C. § 1983 against Rob Jeffreys in his official capacity as Acting Director of the Illinois Department of Corrections ("IDOC"), alleging that an IDOC policy prohibiting them from having contact with their minor children without prior approval violates their Fourteenth Amendment procedural and substantive due process rights. Doc. 92. Plaintiffs seek only declaratory relief and an injunction against IDOC's enforcement of its policy, not damages. Doc. 92 at ¶¶ 86, 88.

Earlier in the litigation, the court denied IDOC's motion to dismiss the initial complaint's substantive due process claim. Docs. 63-64 (reported at 2019 WL 296556 (N.D. Ill. Jan. 23, 2019)). After IDOC replaced its prior parent-child contact policy—the enforcement of which the court enjoined, Doc. 33—with its current policy, Plaintiffs filed an amended complaint directed against the current policy, Doc. 92. IDOC moves under Civil Rule 12(b)(6) to dismiss the amended complaint. Doc. 109. The motion is denied as to Plaintiffs Jennifer Tyree and Ronald Molina, and is denied without prejudice as to Plaintiffs Celina Montoya and Zachary Blaye.

1

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

A.    **IDOC Policy**

Plaintiffs are the parents of minor children. Doc. 92 at ¶ 7. They are all serving terms of MSR, a nondiscretionary form of parole, after having been convicted in Illinois state court of crimes for which they must register as sex offenders. *Ibid*. The Illinois MSR statute provides that registered sex offenders must, during their MSR terms, "refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children without prior identification and approval of an agent of [IDOC]." 730 ILCS 5/3-3-7(b-1)(9). In nearly identical terms, the Illinois Prisoner Review Board, the body responsible for setting MSR conditions, imposes on Plaintiffs what the parties call "the Contact Condition": "You shall refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children without prior identification and approval of an agent of [IDOC]." Doc. 92 at ¶ 13 (emphasis omitted).

After the court enjoined IDOC's prior parent-child contact policy, which implemented the Contact Condition by imposing an automatic six-month ban on released prisoners' contacts with their children, Doc. 33, IDOC adopted its current policy. Doc. 92 at ¶¶ 17-18; Doc. 109-1. The current policy gives parolees the opportunity to meet with a therapist within fourteen days of release. Doc. 109-1 at 3. If a parolee requests contact with her children, the parolee's therapist and parole agent must determine within twenty-one days of her initial appointment with the therapist whether "there is reasonable cause to believe that the parolee's child(ren) would be endangered by parent-child contact." *Ibid*. In making that determination, the "parole agent shall give considerable weight to the therapist's recommendation." *Ibid*. If parent-child contact is restricted or prohibited, the parole agent and therapist must give written reasons for the decision and review it every 28 days. *Id*. at 3-4. The parolee may seek review of an adverse decision from the Deputy Chief of Parole, who must respond within 21 days. *Ibid*.

IDOC's current policy interferes with parolees' relationships with their minor children. Doc. 92 at ¶ 19. Specifically, the policy: (1) imposes "a blanket ban on any and all parent-child contact" at the time of a parent's release from custody regardless of individual circumstances; (2) requires that decisions restricting parent-child contact be rendered by individuals involved in supervising the parolee rather than by a neutral and detached party; (3) does not allow for appeal to a neutral arbiter; (4) does not have written criteria for imposing restrictions, allowing restrictions based on any discretionary risk determined by IDOC; (5) allows therapists to withhold approval for any length of time; (6) allows therapists to withhold approval based on a parolee's failure to take a polygraph examination, even if the parolee cannot afford to pay for the examination; (7) results in months-long delays based on parole agents' obtaining and processing paperwork; (8) bars the ability of a parolee to appeal to the Deputy Chief of Parole until she

3

receives written documentation setting forth reasons for the denial, which can take several months; (9) requires a parent to prove that she poses no risk before she may reside with her minor child; and (10) imposes further restrictions even when approving contact. *Ibid*.

**B.    Jennifer Tyree**

Tyree has three children, two of whom were minors at the time of her release onto MSR: a son, C.T., and a daughter, A.T. *Id*. at ¶ 54. In 2015, Tyree was convicted of criminal sexual abuse against a seventeen-year-old male student at the school where she taught. *Id*. at ¶ 52. While on bond, Tyree had custody of and lived with her children, and she continued living with them after her conviction but before she began serving her sentence. *Id*. at ¶ 56. While incarcerated, she had regular contact with her children, visiting with them once or twice per month, mailing them letters and cards once per week, and talking with them regularly on the phone. *Id*. at ¶ 55. Tyree's ex-husband is supportive of Tyree maintaining a close relationship with her children. *Id*. at ¶ 57. There is no evidence that Tyree poses a danger to her children, as she has never been accused of abuse or misconduct towards her children, found by a court to be an unfit parent, or been subject to proceedings to terminate her parental rights. *Id*. at ¶ 61.

On December 29, 2016, before her release from prison to MSR, Tyree submitted a grievance asking IDOC to change its policy to allow for individual assessments of sex offenders' requests to live with their children while on MSR. *Id*. at ¶ 62. On January 11, 2017, the grievance was denied. *Ibid*. Tyree timely appealed the decision to the Administrative Review Board, which denied relief on June 23, 2017. *Ibid*.

Upon her release to MSR in August 2018, IDOC prohibited Tyree from having any contact with her children for seven weeks even though C.T. wanted to live with her. *Id*. at ¶¶ 53, 58-59. On January 17, 2019, a state judge, aware of Tyree's conviction, ordered that C.T. live

with Tyree until he turned eighteen. *Ibid*. Nonetheless, Tyree's parole agent refused to allow C.T. to live with Tyree. *Id*. at ¶ 60.

### C. Ronald Molina

Molina has a sixteen-year-old son, G.S. *Id*. at ¶ 20. In 2008, Molina was convicted of criminal sexual assault against a fifteen-year-old female. *Id*. at ¶ 21. Before going to prison, Molina had regular contact and visitation with his son, which he maintained while incarcerated through phone calls, visits, and letters. *Id*. at ¶¶ 22-23. Molina has never been accused of abuse or misconduct toward G.S., found by a court to be an unfit parent, or had any proceedings initiated against him to terminate his parental rights. *Id*. at ¶ 24. G.S.'s mother wants Molina to have a relationship and visitation with G.S. *Id*. at ¶ 26.

Molina was released from prison to MSR on September 28, 2018. *Id*. at ¶ 25. Molina has been a regular and cooperative participant in therapy for ten months, *id*. at ¶ 36, but his therapist will not approve visits with G.S. unless he takes a polygraph examination, *id*. at ¶¶ 27-29, something he cannot afford, *id*. at ¶ 30. That is the only reason the therapist has given for withholding his approval of visits with G.S. *Id*. at ¶ 37. Consequently, since his release, Molina has been prohibited from having contact with G.S. *Id*. at ¶¶ 25, 39. Molina's therapist does not allow Molina to talk to G.S. on the phone, even though he believes it would pose no risk to G.S., because the therapist does not want to give other parolees the impression they can circumvent the polygraph requirement. *Id*. at ¶ 38.

Molina requested paperwork to appeal the requirement that he pay for and take a polygraph examination before seeing his son, and was provided with the paperwork in December 2019, eleven months after his initial request for visitation. *Id*. at ¶¶ 31-32. Molina completed the paperwork immediately upon receiving it, but his parole agent did not retrieve it until January

26, 2020. *Id*. at ¶¶ 33-34. To date, Molina has not been provided written reasons for the prohibition on his visiting G.S., and thus cannot pursue an administrative appeal. *Id*. at ¶ 35.

### D. Celina Montoya

Montoya has three children, the youngest of whom, L.M., is fifteen years old. *Id*. at ¶ 63. Montoya was convicted in 2015 of criminal sexual assault against a fourteen-year-old male student at the school where she taught. *Id*. at ¶ 64. Montoya was released to MSR in April 2019. *Id*. at ¶ 71. At first, IDOC would not allow her to reside at her home because L.M. lived there. *Id*. at ¶ 69. Eventually, IDOC approved Montoya's request to live at her home, but required L.M. to move out. *Id*. at ¶ 70. After five months, Montoya was permitted to reside with L.M. *Id*. at ¶ 72; Doc. 128-4.

### E. Zachary Blaye

Blaye is the father of a thirteen-year-old son, Z.M. Doc. 92 at ¶ 40. Blaye was convicted in 2009 of criminal sexual assault against an adult woman. *Id*. at ¶ 41. He was released from prison to MSR on June 10, 2019. *Id*. at ¶ 44. Blaye's therapist prohibited him from having any contact with Z.M. for six months. *Id*. at ¶ 46. Eventually, a different therapist approved Blaye having phone contact with Z.M. *Id*. at ¶ 50. On January 27, 2020, Blaye was permitted to have in-persons visit with Z.M. *Id*. at ¶ 51.

### Discussion

Plaintiffs do not challenge the Illinois MSR statute or the Contact Condition *themselves*, as such a claim would be barred by the *Heck* doctrine. 2019 WL 296556, at *3. Rather, Plaintiffs allege that IDOC's *implementation* of the Contact Condition through its current policy violates their substantive and procedural due process rights—claims that *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar. *Id*. at *3-4.

## I.        Montoya and Blaye

Montoya and Blaye have been granted the ability to see their children.  Because they seek only injunctive relief and not damages, their claims may be moot.  *See Speech First, Inc. v. Killeen*, __ F.3d __, 2020 WL 4333565, at *11 (7th Cir. July 28, 2020) (holding that "[a] question of mootness arises when … there is no longer an ongoing controversy," such as when "the source of the plaintiff's prospective injury has been removed and there is no effectual relief whatever that the court can order") (internal quotation marks and citation omitted).  The court accordingly asks the parties for supplemental briefs on the question of mootness; if Montoya's and Blaye's claims are not moot, the court will resolve the merits of Defendants' Rule 12(b)(6) motion as to them.

## II.       Tyree and Molina

### A.        Substantive Due Process Claim

Tyree and Molina's substantive due process claim alleges that the IDOC's current policy violates their "fundamental rights to contact and live with their children while on MSR."  Doc. 92 at ¶ 88.  Substantive due process protects a parent's interest in the "care, custody, and control of [her] children."  *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion).  A parent can pursue a substantive due process claim when government officials unjustifiably separate her from her children.  *See Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1018-19 (7th Cir. 2000).  IDOC contends that Plaintiffs' claim is subject to the limits imposed by *Turner v. Safley*, 482 U.S. 78 (1987), on prisoner claims.  Plaintiffs disagree, Doc. 118 at 8-10, but there is no need to resolve whether *Turner* applies because their substantive due process claim survives dismissal even under the *Turner* standard.

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates," *Turner*, 482 U.S. at 84, and also persons on parole or MSR, *see Felce v. Fiedler*, 974

F.2d 1484, 1495 (7th Cir. 1992) (applying *Turner* to the "period of parole" because "parole is an extension of the prison walls and the basic responsibility of [IDOC] toward the inmate is no less during that period than during incarceration.") (internal quotation marks and citations omitted). That said, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," *Turner*, 482 U.S. at 84 (internal quotation marks omitted), and "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," *id*. at 89. Courts therefore must "afford[] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989).

The *Turner* standard directs courts to consider four factors in fixing the correct balance between a prisoner's constitutional rights and the need for deference to prison administrators: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open alternative means of exercising the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91) (internal quotation marks omitted). "The burden … is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Significantly for present purposes, a court applying *Turner* at the pleading

stage must decide whether the "complaint *alone* is a sufficient basis on which" to dismiss the plaintiff's claims. *Lashbrook v. Hyatte*, 758 F. App'x 539, 542 (7th Cir. 2019) (emphasis added).

The operative complaint alleges several ways in which IDOC's current policy unnecessarily burdens parent-child contact and, unsurprisingly, contains no allegations concerning any penological interest justifying those restrictions. Doc. 92 at ¶ 19. Tyree has been prevented from living with her son. *Id*. at ¶¶ 60, 62. Molina has been prohibited from having any contact with his son due to his inability to pay for a polygraph examination. *Id*. at ¶¶ 37, 39. Although IDOC asserts that those restrictions advance the "governmental interest [of protecting] the general public, especially children," Doc. 109 at 8, "[a]t th[e] pre-discovery stage of the proceedings, there is no evidentiary record from which the … court could conclude that [Plaintiffs'] requests posed a [threat to their children] or were incompatible with [their MSR]." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *see also Lashbrook*, 758 F. App'x at 542 ("[A]t this prediscovery stage, there is no evidentiary record from which the judge could evaluate the prison's resource concerns, the impact on prison staff of [Plaintiff's] request for confidential attorney-client calls, or the viability of other means of communicating with his attorney."). Consequently, the court cannot at this juncture hold under *Turner* that there is a "valid[] and rational[] … connection between a legitimate and neutral government objective and the restriction[s]" placed on Tyree's and Molina's contact with their children. *Munson v. Gaetz*, 673 F.3d at 633; *see also Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (holding that it was premature at the pleading stage for the district court to assess whether the prison's asserted budgetary constraints justified restrictions on prisoners' religious practices); *Ortiz*, 561 F.3d at 669 (same, where the district court incorrectly "assumed, on the basis of the complaint alone,"

that the prison's denial of a "rosary" and "prayer booklet or pamphlet" was appropriate based on a prison official's contention that "these items [were] not vital to worship"); *Lindell v. Frank*, 377 F.3d 655, 657-58 (7th Cir. 2004) ("Although it might be possible to envision a security justification that would support the defendants' action, we believe that the district court acted prematurely in presuming such a justification [given the existence of] a disputed issue of material fact."); *Tucker v. Baldwin*, 2019 WL 4450524, at *6 (N.D. Ill. Sept. 17, 2019) ("Plaintiffs correctly point out that these arguments largely depend upon affirmative factual assertions made by Defendant. … Given the allegations of Plaintiffs' complaint and the lack of an evidentiary record, the dismissal of Plaintiffs' First Amendment claim would be premature at this stage.").

In pressing the contrary result, IDOC argues that it "does not impose a 'blanket ban' on parent-child contact." Doc. 109 at 7-9. But the complaint alleges that, under the IDOC's current policy, no prisoner is granted immediate contact with her children upon release to MSR, resulting in a blanket ban of some duration. Doc. 92 at ¶ 19. At this stage of the proceedings, the court must take that allegation as true. *See Zahn*, 815 F.3d at 1087.

IDOC next argues that "Plaintiffs cannot sustain a substantive due process claim based on an alleged lack of written guidelines for IDOC's decision." Doc. 109 at 9-10. This argument fails. First, Plaintiffs allege not that the new policy is unwritten—it is, after all, written, Doc. 109-1—but rather that "[t]he *criteria* for imposing restrictions on parent-child contact are unwritten and unduly open-ended." Doc. 92 at ¶ 19 (emphasis added). Second, Plaintiffs' substantive due process claim rests on far more than that one allegation. *Ibid*. Thus, even if the policy's criteria were written in lucid detail, Plaintiffs' substantive due process claim still would survive dismissal. *Ibid*. ("*In practice*, the new policy … results in unreasonable interference with parent-child relationships.") (emphasis added).

B.      **Procedural Due Process Claim**

Tyree and Molina allege that the IDOC's current policy violates their procedural due process rights by providing "[in]adequate … process for considering and deciding parolees' requests for contact with their minor children."  Doc. 118 at 12; *see* Doc. 92 at ¶¶ 85-86.  The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted).  "The basic legal questions presented by due process cases … are familiar: (1) is there a … liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?"  *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 882 (7th Cir. 2019).  IDOC does not seriously contest the first element, so whether Plaintiffs' procedural due process claim survives dismissal turns on whether they allege facts sufficient to show that their "parental rights [were] denied without an 'opportunity for them to be heard at a meaningful time and in a meaningful manner.'"  *Brokaw*, 235 F.3d at 1020 (quoting *Matthews*, 424 U.S. at 333).

As noted, Plaintiffs allege numerous ways in which the IDOC's policy unnecessarily burdens parental contact, such as imposing a de facto ban that does not account for individual circumstances.  Doc. 92 at ¶ 19.  In addition, Molina alleges that his request for the paperwork necessary to appeal the denial of his request to see his child arrived eleven months after he initially asked for contact, *id*. at ¶¶ 31-32, and that, to date, he has not been given a written explanation of why he is prohibited from seeing his son, preventing him from pursuing an administrative appeal, *id*. at ¶ 35.  These allegations suffice—at least at the pleading stage, and with no evidence establishing IDOC's justifications—to state a claim that the policy deprives Plaintiffs of their "parental rights … without an 'opportunity for them to be heard at a

meaningful time and in a meaningful manner.'" *Brokaw*, 235 F.3d at 1020 (quoting *Matthews*, 424 U.S. at 333); *see ibid.* (holding that "government officials [may] not remove a child from [the plaintiff's] home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances"); *id.* at 1021 (requiring a "post-deprivation judicial review of a child's removal [that is] prompt and fair"); *Doe v. Heck*, 327 F.3d 492, 526-27 (7th Cir. 2003) ("[W]e note that the precise timing and form of the procedures that the government must afford an individual hinge upon the particularities of the situation, and that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances. To the contrary, due process is flexible, requiring different procedural protections depending on the situation at hand.") (internal quotation marks and citation omitted).

## Conclusion

IDOC's motion to dismiss is denied as to Tyree and Molina, and is denied without prejudice as to Montoya and Blaye. The parties shall file simultaneous briefs on August 18, 2020, and simultaneous response briefs on September 1, 2020, addressing whether Montoya's and Blaye's claims are moot.

August 4, 2020

_____
United States District Judge